CENTRAL TRUST CO. OF NEW YORK *v.* MARIETTA & N. G. RY. CO.,
(BLUE RIDGE MARBLE CO., INTERVENER.)

*(Circuit Court, N. D. Georgia. June 22, 1892.)*

1. RECEIVER—CONTRACT FOR TRANSPORTATION—SPECIFIC PERFORMANCE.
   A railroad company contracted with a marble company to carry marble from T. to M., and allow same to be stopped over at N., an intermediate point, to be dressed, and then reshipped and carried to M. without extra charge, the entire charge for freight being paid in advance. *Held*, that a receiver appointed in a suit by the bondholders to foreclose a mortgage on the railroad could not be compelled to transport marble from N. to M., although the freight had been paid for such transportation before the appointment of the receiver. *Express Co.* v. *Railroad Co.*, 99 U. S. 191, followed.

2. SAME—LIEN.
   Specific enforcement of such contract would be equivalent to requiring the repayment of the freight, and this could not be done, inasmuch as the complainant had no lien for such freight.

In Equity. Bill to foreclose a railway mortgage. Heard on demurrer to the intervening petition of the Blue Ridge Marble Company. Demurrer sustained.

On January 19, 1891, there was an existing contract between the Blue Ridge Marble Company and the Marietta & North Georgia Railway Company, by which the railway company agreed to haul marble from the quarries at Tates station to Marietta, Ga., and allow said freight to be stopped over, cut, and dressed at an intermediate station called "Nelson." On said date, under this contract, there was considerable marble at Nelson, being dressed and worked, the freight on which had been prepaid

from Tates station to Marietta; and on the said date said railway was put in the hands of a receiver on the petition of the trustee for the bondholders. Said receiver refused to recognize said contract, and to haul freight stopped over at Nelson, although the freight charges had been prepaid to Marietta. The Blue Ridge Marble Company intervened in foreclosure proceedings, and asked that receiver be compelled to complete the haul of all freight at Nelson, the charges on which had been prepaid, or that said receiver return to the Marble Company the freight charges unearned. The Central Trust Company demurred to intervention, upon the ground that the claim is not a lien superior to the rights of the bondholders, and because the claim was not a traffic balance, or a claim within those usually allowed prior to the bonds.

*F. C. Tate*, *R. N. Holland*, and *B. F. & C. A. Abbott*, for interveners.
*Henry B. Tompkins*, for Central Trust Co.
*A. S. Clay*, for receiver.

NEWMAN, District Judge. I am satisfied that the question involved in this intervention is controlled by the case of *Express Co.* v. *Railroad Co.*, 99 U. S. 191. In that case the contract was made between the express company and the railroad company, whereby the express company agreed to lend the railroad company $20,000, to be expended in repairing and equipping its road, and that the railroad company should grant to the express company the necessary privileges and facilities for the transaction of all its express business over the road; the sum found to be due the railroad company therefor upon monthly settlements of accounts to be applied to the payment of the loan and the interest thereon. The $20,000 was paid in compliance with the contract, and shortly thereafter the express company entered upon the road, transporting freight according to the terms of the contract, keeping regular accounts, and exhibiting them to the company, which were always approved; and it continued to act under said contract until a receiver, appointed in a bill to foreclose the mortgage, refused to continue the contract, and the express company was compelled to abandon the road, although its debt was unpaid. By consent of the court, the express company was allowed to file its bill in circuit court of the United States for the western district of North Carolina, where the foreclosure proceedings were pending. The bill prayed for a decree compelling the railroad company to specifically perform its contract, and to such other and further relief as the nature and circumstances of the case might require. The prayer of petitioners in this intervention is the same in effect as the prayer of complainants in the case referred to. The supreme court, after disposing of other questions, uses the following language in the opinion:

"There is another objection to the appellant's case, which is no less conclusive. The road is in the hands of the receiver, appointed in a suit brought by the bondholders to foreclose their mortgage. The appellant has no lien. The contract neither expressly nor by implication touches that subject. It is not a license, as insisted by counsel. It is simply a contract for the transportation of persons and property over the road. A specific performance by the receiver would be a form of satisfaction or payment which he cannot be

required to make. As well might he be decreed to satisfy the appellant's demand by money, as by the service sought to be enforced. Both belong to the lienholders, and neither can thus be diverted. The appellant can, therefore, have no *locus standi* in a court of equity."

It is clear that the view of the supreme court as just quoted must control the question presented by the intervention in this case. It is a peculiar condition of things, and unfortunate for the petitioners, and a hardship on them, undoubtedly; but to require the receiver to transport its marble to Marietta would be equivalent to requiring the receiver to pay them in money the amount of the freight from Nelson to Marietta, and this the court certainly could not do, inasmuch as they have no lien. The petition of interveners sets forth the fact as above stated, and consequently the demurrer to the petition must be sustained, and it is so ordered.